## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF MISSISSIPPI

| | | |
|---|---|---|
| **JOHNSON & FREEDMAN, L.L.C.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION FILE** |
| **vs.** | ) | |
| | ) | **NO. 3:14cv026-MPM-SAA** |
| **MS DEFAULT RESOLUTION,** | ) | |
| **L.L.C.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### PLAINTIFF'S RESPONSE TO DEFENDANT'S
### MOTION REQUIRED BY MAGISTRATE

COMES NOW, Plaintiff, Johnson & Freedman, L.L.C., ("J&F"), in the above-referenced civil action, and hereby files this its Plaintiff's Response to Defendant's Motion Required by Magistrate, and in support thereof respectfully shows this honorable Court the following:

### BACKGROUND:

1) On or about the 6th day of June, 2014, Hon. United States Magistrate Judge S. Allan Alexander entered an order requiring Defendant MS Default Resolution, L.L.C. to file a motion articulating its positions that Plaintiff lacks standing to bring this action, explaining the parties' differences regarding the effect of the bankruptcy proceeding on the issues presented in this court, and presenting legal authority on the issue of whether this court even has jurisdiction to proceed pending action by the bankruptcy court.

1

2) On or about July 21, 2014, Defendant, MS Default Resolution, L.L.C., filed a motion articulating their position as to the Magistrate Judge's order.

3) Defendant's Motion addresses many issues which are not particularly related to standing and jurisdiction of the parties as requested to be addressed by the Magistrate Judge's Order, however, due to the fact that such issues were presented to this Court, Plaintiff, J&F, now feels compelled to respond to the same, and will address each allegation contained in the Defendant's Motion.

## **FACTUAL HISTORY**

4) The parties herein were connected through a business relationship related to the foreclosure of homes in Mississippi. J&F contracted with Prommis Solutions, L.L.C. and its related companies (hereinafter collectively referred to as "Prommis") to perform various services including among other things title searches and crying foreclosure sales. MS Default was a title vendor in Mississippi for Prommis who also cried foreclosure sales for Prommis in Mississippi.

5) Plaintiff, J&F, contracted with Prommis Solutions, LLC, as a vendor in order to complete some of the non-legal requirements related to the foreclosure of properties, including title work, noticing, and actually calling the foreclosure sales on the Courthouse Steps. Some of these duties were then sub-contracted out to MS Default Resolution Services, L.L.C..

2

6) Such services were provided on an "as needed" basis as each individual service was ordered by Prommis and MS Default billed Prommis monthly for such services, which included from time to time services relating to properties on which JP Morgan Chase Bank and its related companies (hereinafter collectively referred to as "Chase") had an interest.

7) Until January of 2013, Prommis paid MS Default's invoices, but beginning in January of 2013, Prommis failed to pay MS Default the amounts due when billed for their services.

8) On March 18, 2013, Prommis filed for bankruptcy protection in the United States Bankruptcy Court for the District of Delaware and its case was known as Case No. 13-10551.

9) On May 20, 2013, MS Default filed a motion in Prommis' bankruptcy proceeding for relief from the automatic stay to set off funds claiming that although Prommis has sent them work for years (including but not limited to work relating to title and foreclosures) and paid for that work regularly, that in January 2013 Prommis stopped paying them for their invoices.

10)    In the motion filed by MS Default, MS Default claimed that Prommis owed MS Default $145,718.65 for prepetition work, $77,745.00 for post-petition work and $35,010.00 for collection costs including reasonable attorneys' fees.  The total amount claimed by MS Default, therefore, was $258,473.65.

11)  Initially, MS Default wrongfully and illegally retained funds in the total amount of $1,131,645.20 relating to foreclosure sales conducted by it on behalf of Chase on 19 separate properties because of its alleged unpaid claims as referenced above.

12)  J & F was successful in obtaining from MS Default the amount of $705,247.50, leaving the current amount being wrongfully and illegally withheld by MS Default of $426,397.70.  However, MS Default required J&F to turn over foreclosure deeds relating to all 19 properties before it would pay over the majority of these funds to J&F, even though there was still an amount being wrongfully and illegally retained by MS Default that was significantly more than what MS Default was even claiming. MS Default argues that this exchange constitutes an agreement, and attached a copy of said letter to their Motion as Exhibit "A". J&F would note that this particular exchange is irrelevant to the issues requested to be addressed by the Court at this time.

13)  J&F feels obligated to respond to all assertions contained in the Defendant's Motion. The document attached to MS Default's Motion as Exhibit "A" is an agreement to enter into a future contract. Mississippi has held that an agreement to agree is not a contract where it leaves certain terms to be agreed upon for the purpose of a final contract. *Stern v. Gatzaros*, 1999 WL 33537209 (N.D. Miss. 1999). Further, the lack of relevancy to the Court's request for MS Default to

4

address poses problems as well. In this situation, the purported "letter agreement" could only be properly considered, if at all, in the context of a motion for summary since it seeks to introduce a document which is beyond the pleadings.

14)     As a result, MS Default has further wrongfully and illegally retained $167,924.05 ($426,397.70 - $258,473.65) more than what it is even claiming, including its unsubstantiated claim for attorneys' fees.

15)     As a result, MS Default currently retains $334,213.00 in sales proceeds belonging to J&F's client and Chase has made a demand against J&F to pay that amount to Chase.  J&F has continually and repeatedly demanded that MS Default remit those funds as well.

16)     Additionally and as a direct result of the actions of MS Default, Chase has refused to send any additional work to J&F in Mississippi resulting in severe and substantial hardship and loss of business by J&F.

<u>**ARGUMENT AND CITATION OF AUTHORITY**</u>

**I. Standing**

The United States Supreme Court defined standing as whether the litigant is entitled to have the court decide the merits of the dispute. *Kendall v. National Union Fire Ins. Co. of Pittsburgh, PA*, 388 F.Supp.2d 755, 758 (N.D.Miss.,2005)(citing *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975).

The Defendant's challenge to Standing is based upon the relationship, between the parties in this case. In diversity cases, the Federal District Courts are to apply state law to substantive issues. The relationship between the parties and the duty owed to J&F by MS Default is based upon state law claims, therefore, the issue of standing should be addressed by an analysis based upon Mississippi Law. The Mississippi Supreme Court has held that "'Standing' is a jurisdictional issue which may be raised by any party or the Court at any time." *Hall v. City of Ridgeland*, 37 So.3d 25, 33 (Miss. 2010)(citing I*n the Matter of the Enlargement and Extension of the Municipal Boundaries of the City of Horn Lake*, 822 So.2d 253, 255 (Miss. 2002) (quoting *City of Madison v. Bryan*, 763 So.2d 162, 166 (Miss. 2000))). In Mississippi, parties have standing to sue "when they assert a colorable interest in the subject matter of the litigation or experience an adverse effect from the conduct of the defendant, or as otherwise provided by law."[1] *Hall v. City of Ridgeland*, 37 So.3d 25, 33 (Miss. 2010).

Mississippi Law on standing clearly shows that in order to bring a suit, the Plaintiff must have an interest in the subject matter of the litigation. It is evident in this case that Plaintiff, J&F, holds a clear interest to the subject matter of the litigation at issue, as the monies at issue are due and payable to a client of J&F, JP Morgan Chase Bank, N.A., and that those monies are currently due to be paid, via

---

[1] This Court has noted that "'[c]olorable,' when used to describe a claim or action, means 'appearing to be true, valid, or right.'" *Hall v. City of Ridgeland,* 37 So.3d 25, 33 (Miss. 2010)(citing *Schmidt v. Catholic Diocese of Biloxi*, 18 So.3d 814, 827 n. 13 (Miss. 2009)).

J&F, directly to JP Morgan Chase Bank, N.A. from Defendant, MS Default Resolution Services. Because the monies at issue were collected by MS Default via contractual work performed on behalf of vendors of J&F, and the regular course of business was that the monies collected from the foreclosure sales were to be paid via J&F to JP Morgan Chase Bank, N.A., Plaintiff has an interest in receiving the funds at issue and paying out said funds to JP Morgan Chase. As such, J&F has a valid enforceable interest in the subject matter of this litigation, and thus has standing to bring this action.

## II. MS Default owed a duty to the Plaintiff, Johnson and Freedman

The Defendant contends in their Motion that the Plaintiff has no right to recover from MS Default because MS Default owed no duty to the plaintiff. This contention is quickly discounted by the actions of the Defendant. Defendant claims that there is no duty owed to J&F, however, on defendant's own admission, Defendant paid a large portion of the funds at issue directly to J&F.[2] Further, Defendant has admitted that there is a correlation between the parties at issue through its own Motion. MS Default attached the *Motion of MS Default Resolution, LLC, pursuant to section 362(D)(1) and 553(A) of the Bankruptcy Code for Limited Relief from the Automatic Stay to set off Prepetition Obligations* to their Motion as exhibit "B". On Page 2 of 18 of the referenced Motion, Defendant states that MS Default is a

---

[2] It is undisputed by the parties that MS Default made a payment of over $700,000.00 (seven hundred thousand dollars) directly to Johnson & Freedman, LLC, for the payment of proceeds from approximately 19 foreclosure sales.

party to an open account under Mississippi law with Prommis. Under the footnote to said statement, MS Default goes on to further state, "The Movant contends that the parties to the open account are MS Default, Prommis, and the non-debtors Johnson & Freedman and JP Morgan Chase Bank. The movant does not seek a ruling from the Court affecting the rights of Johnson & Freedman or JP Morgan Chase Banks in this Motion."

This admission that J&F and JP Morgan Chase Bank are parties to the Account is self-explanatory and this statement along with the direct payment of Foreclosure Proceeds to J&F by the Defendant together show that Defendant MS Default Resolution Services does in fact owe a duty to Plaintiff, J&F.

It is further evidenced that J&F holds an interest in the proceeds which are at issue in this case via the *Order approving the Disclosure Statement and Findings of Fact, Conclusions of Law, and Order Confirming the Debtors' First Amended Plan of Liquidation under Chapter 11 of the Bankruptcy Code*. Attached hereto as Exhibit "A". The referenced order was entered on December 19, 2013, and amends and confirms the Plan of Liquidation of the Prommis Solutions entities. It contains a section concerning *Waiver of Claims* as to MS Default, J&F, and JP Morgan Chase, as follows:

(a) Except as otherwise expressly provided in the Plan (including in Section 11.7 hereof) and the Liquidating Trustee Causes of Action, nothing contained in this Plan or in the Plan Confirmation Order shall be deemed to be a waiver or the relinquishment of any rights or causes

8

of action that the Debtors or the Liquidating Trustee may have or which the Liquidating Trustee may choose to assert on behalf of the Debtors' Estates under any provision of the Bankruptcy Code or any applicable non-bankruptcy law or rule, common law, equitable principle or other source of right or obligation, including, without limitation, (i) any and all Claims against any person or Entity, to the extent such Person or Entity asserts a crossclaim, counterclaim, and or claim for setoff which seeks affirmative relief against the Debtors or their officers, directors, or representatives, (ii) the turnover of all property of the Debtors' Estates, and (iii) any claims or cause of action that the Debtor or their estates possess as against MS Default Resolution, LLC ("MS Default") including, without limitation, with respect to proceeds of foreclosure sales conducted and/or cried out by MS Default, provided, however, that (1) the Liquidating Trustee shall not be required to prosecute any claims or causes of action against MS Default unless and until (a) either Johnson & Freedman, LLC ("J&F") or JP Morgan Chase Bank, N.A., ("Chase") request that the Liquidating Trustee prosecute such claims or causes of action and (b) an agreement is reached with respect to the payment of the fees and expenses to be incurred by the Liquidating Trust in its prosecution of any such claims or cause of action; and (2) notwithstanding anything to the contrary in the Confirmation Order, Plan, Disclosure Statement or Plan Supplement, the claims and causes of action against MS Default are expressly preserved and shall be Causes of Action and Liquidating Trustee Causes of Action and the Liquidating Trustee shall be authorized to pursue such claims and cause of action against MS Default Provided, however, the ***net proceeds of any such claims and cause of action shall be the property of Chase or J&F or both and shall be paid to Chase and J&F*** (subject to Chase and J&F Agreeing on the appropriate recipient and advising the Liquidating Trustee)[emphasis added].

As stated above, the Bankruptcy Court has recognized that any and all excess funds from the proceeds of foreclosure sales of properties as exercised by MS Default on behalf of Prommis, belong to J&F and or Chase. This clearly exemplifies the rights and responsibilities of J&F as to the proceeds of the Foreclosure sales, and thus, the duty of MS Default to J&F to turn over the funds in question.

### III. Effect of the Bankruptcy Court Proceedings.

With regard to MS Default motion for relief from the automatic stay to set-off against Prommis, neither JP Morgan Chase Bank, N.A. (hereinafter referred to as "Chase") nor J&F were actual parties to those particular Bankruptcy proceedings. J&F and Chase were both involved in the bankruptcy proceedings via their respective filings of an "*Amicus*" brief, or the like, which expressed their objections to the *Motion of MS Default Resolution, LLC, pursuant to section 362(D)(1) and 553(A) of the Bankruptcy Code for Limited Relief from the Automatic Stay to set off Prepetition Obligation*. Throughout the litigation of the MS Default motion J&F and Chase were present as interested entities, however, as stated above, were not actual parties to the case.

Because J&F and Chase were not actual parties to the Bankruptcy proceedings, it is clear that said proceedings would not affect the potential claims of either J&F or Chase being brought against MS Default. The Defendant's contentions that the bankruptcy proceedings limit the potential of J&F to bring a claim against MS Default is further limited by MS Defaults own statements in their Motion as mentioned above, wherein MS Default stated that "they did ***not*** seek a ruling from the Court ***affecting the rights*** of Johnson & Freedman or JP Morgan Chase Bank". [Emphasis Added].

In addition to the clear and obvious statements by the Defendant's in their Motion, there was also never an order entered by the Bankruptcy Court. As of August 12, 2014 no order determining a setoff amount was entered by the Bankruptcy Court. During the hearing on the Motion, the Judge stated on page 45 of the transcript at like 11-15 that he was "prepared to grant the motion for relief to allow the set off, but I will hold in *abeyance* the exercise of that set off because I think that there are legitimate open questions with respect to the precise amounts that are due and owing." The Judge further stated that the parties were to come to an agreement on the terms of the setoff.

In accordance with Rule 9021 of the Federal Rules of Bankruptcy Procedure, which provides in pertinent part: "a judgment or order is effective when entered under Rule 5003." As of the date of filing this response, no order has been entered in accordance with such rule, therefore, there is no effective determination as to any alleged setoff amount. MS Default has not evidenced any attempts on their behalf to get with the parties and come to an agreement as to an amount of the setoff, or to bring the claims back before the Bankruptcy Court for a formal determination and entry of an order.

Defendant further alleges that the actions and proceedings in the Bankruptcy court invoke the application of issue preclusion or collateral estoppel. The doctrine of collateral estoppel, also known as issue preclusion, "applies to prevent issues of

11

ultimate fact from being re-litigated between the same parties in a future lawsuit if those issues have once been determined by a valid and final judgment." *Porter v. Farris*, 2008 WL 3842905, 3 (N.D. Miss. 2008)(citing *Vines v. Univ. of Louisiana at Monroe*, 398 F.3d 700, 705 (5th Cir.2005) (citing Ashe v. Swenson, 397 U.S. 436, 443, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970); Restatement (Second) of Judgments § 27 (1982)))).

Under federal law, there are three prerequisites to the application of collateral estoppel: (1) that the issue at stake be identical to the one involved in the prior litigation; (2) that the issue has been actually litigated in the prior litigation; and (3) that the determination of the issue in the prior litigation has been a critical and necessary part of the judgment in that earlier action. *Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 290 (5th Cir.2005). In addition to these three factors, the court must also determine that there is no special circumstance that would make it unfair to apply the doctrine of collateral estoppel. *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 391 (5th Cir.1998).

The issue of collateral estoppel clearly does not apply in the instant case. In order to qualify for dismissal based upon collateral estoppel, all three prerequisites must be met. In the instant case, the three pre-requisites are not met. First, the issue must be identical to the issue at stake in the prior action, while the money at issue in the prior action is in essence the same, the issue of who is entitled to the money is

not. The claim in bankruptcy court was between MS Default and Prommis, as J&F was not a named party to that action, and simply filed an objection to the disbursement of funds. It would be impossible for the actual issue to have been litigated in the prior action, as J&F was not an actual party to the litigation, and only entered the proceeding via an "amicus" brief, and was never named as a party to the matter. Further, the defendant must prove that the determination of the issue in the prior litigation has been a critical and necessary part of the judgment in that earlier action, however, again, as stated above, there was never a final judgment entered in the earlier action between Prommis and MS Default.

The failure of the Defendant to properly invoke the doctrine of collateral estoppel or claim preclusion is further evidenced by the above referenced Bankruptcy order, attached hereto as Exhibit "A," as it pertains to the waiver of claims, or lack thereof, as to the proceeds of foreclosure sales called by MS Default on behalf of Prommis. The references in the order explicitly show that no final judgment was ever entered concerning the setoff amount. The order specifically states:

> "…nothing contained in this Plan…  shall be deemed to be a waiver or the relinquishment of any rights or causes of action that the Debtors or the Liquidating Trustee may have or which the Liquidating Trustee may choose to assert on behalf of the Debtors' Estates under any provision of the Bankruptcy Code or any applicable non-bankruptcy law or rule, common law, equitable principle or other source of right or obligation…"

Without a final order being entered as to MS Default's Motion for setoff, there is no basis for dismissal based upon collateral estoppel. As such, the Defendant's claim that collateral estoppel is invoked in this action is meritless, and the doctrine does not apply.

## IV. Jurisdiction.

Title 28 of the United States Code, as Annotated Section 1332 outlines the requirements for Federal Jurisdiction based upon Diversity. The statute states as follows:

> (a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between-- (1) citizens of different States; (2) citizens of a State and citizens or subjects of a foreign state, except that the district courts shall not have original jurisdiction under this subsection of an action between citizens of a State and citizens or subjects of a foreign state who are lawfully admitted for permanent residence in the United States and are domiciled in the same State…" 28 U.S.C.A. § 1332

Further, the United States Code, as Annotated continues to define the citizenship of a corporation as follows:

> (1) a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business…" 28 U.S.C.A. § 1332.

Additionally, for diversity jurisdiction purposes, any limited liability company's citizenship is determined by the citizenship of its members. *Spectrum Origination L.L.C. v. Alliance Consulting Group, L.L.C.* 2014 WL 1338384, 1

(S.D.Miss.,2014)(citing *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir.2008)).

As conceded by the Defendant in their Motion, the pending bankruptcy matter has no effect on this Court's jurisdictional authority to determine the instant case. Plaintiff entered the Bankruptcy proceeding via an Amicus brief, objecting to the disbursement of funds, and is not an actual or party to the Bankruptcy action that is pending in the Delaware Court. Additionally, Plaintiff and defendant in this case have no claims against each other in the bankruptcy matter for damages. The Bankruptcy court has stated via the order attached hereto as Exhibit "A", that they are not taking any further action regarding the rights of Prommis or MS Default unless requested to do so by J&F or Chase. This concession by the bankruptcy court evidences an intention that the bankruptcy court is not currently exercising jurisdiction over these funds or of the claims in this case. As a result of this, J&F has chosen to bring these claims before the District court based upon the Diversity Jurisdiction requirements outlined in 28 U.S.C.A. § 1332.

Also, the Mississippi Priority Jurisdiction rules are clearly defined. The 'first to file' or 'race to the courthouse' rule is well-established in Mississippi case law. The rule is outlined as follows: "'[w]here two suits between the same parties over the same controversy are brought in courts of concurrent jurisdiction, the court which first acquires jurisdiction retains jurisdiction over the whole controversy to the

exclusion or abatement of the second suit.'" *Channel Control Merchants, LLC v. Davis*, 2011 WL 1356937, 4 (S.D. Miss. 2011)(quoting *Scruggs, Millette, Bozeman, & Dent, P.A. v. Merkel and Cocke, P.A.*, 804 So.2d 1000,1006 (Miss. 2001)(See also *In Re Petition of Beggiani*, 519 So.2d 1208, 1210 (Miss.1988))).

In the instant case, there is no prior case which was filed addressing the same issues between the same plaintiff and defendant. Therefore, the priority jurisdiction rule is not at issue, and proper jurisdiction lies with the District Court of the Northern District of Mississippi. As such, there is nothing that would prevent this Court from proceeding with hearing this case.

## V. CONCLUSION

In the foregoing argument, Plaintiff has clearly shown the basis for standing and jurisdiction of the claims requested in Plaintiff's Complaint and has clearly outlined the basis of both a duty owed to J&F by MS Default, as well as outlined the outcome of certain Bankruptcy proceedings. J&F has also extensively displayed the lack of relevance that the doctrine of Collateral Estoppel and/or claim preclusion would have in this case. Jurisdiction is not contested by either party, and proper jurisdiction lies with the Northern District of Mississippi.

WHEREFORE, PREMISES CONSIDERED, Plaintiff, Johnson & Freedman, L.L.C., respectfully request that this Response to Defendant's Motion Required by

Magistrate be received and filed, and that the Magistrate deny the dismissal of the Plaintiff's Complaint.

    RESPECTFULLY SUBMITTED, THIS THE 13th DAY OF AUGUST, 2014

JOHNSON & FREEDMAN, L.L.C.,

BY:   */s/ Jessica L. Perri*
Jessica L. Perri, MS Bar No. 104084

  */s/ Lawrence W. Kelly*
Lawrence W. Kelly, GA Bar No. 141495
*Admitted Pro Hac Vice*

RCO Legal, P.S.
1587 N.E. Expressway
Atlanta, Georgia 30329
Telephone:(678) 298-8829
Facsimile: (404) 329-8039
Email: jperri@rcolegal.com
Attorneys for Plaintiff

## <u>CERTIFICATE OF SERVICE</u>

I, Jessica L. Perri, do hereby certify that a copy of the foregoing document has been served upon all opposing counsel through the ECF filing system this the 13th Day of August, 2014.


      _/s/ Jessica L. Perri_____

Jessica L. Perri